## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FT. LAUDERDALE DIVISION

Case No.: _____

ROSE MARY PAOLINO and JEFFREY
PAOLINO, on behalf of
themselves and all others similarly situated,

      Plaintiffs,

v.

PNC BANK, NATIONAL ASSOCIATION,
and JAMES E. ALBERTELLI, P.A., d/b/a
ALAW,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs, Rose Mary Paolino and Jeffrey Paolino (hereinafter "Plaintiffs" collectively), on behalf of themselves and all others similarly situated, file this action against Defendant, PNC Bank, National Association ("PNC") and James E. Albertelli, P.A., d/b/a ALAW ("Albertelli Law") (hereinafter "Defendants" collectively) for their violations of the Florida Consumer Collection Practices Act § 559.55 *et seq*. ("FCCPA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA"). In support, Plaintiffs allege the following:

## INTRODUCTION

1.    Plaintiffs and Class Members are Florida homeowners whose home loans have been in default.  PNC is the servicer and collector of Plaintiffs' and Class Members' mortgage loan debts. Albertelli Law acts as PNC's agent and representative in collecting mortgage loan debts PNC has serviced.

2.     At all times material, PNC and Albertelli law have each routinely and systematically mailed reinstatement quotes under the letterhead of Albertelli Law that list the total amounts homeowners, including Plaintiffs and Class Members, must pay to reinstate their loans.

3.     These reinstatement amounts have routinely included "estimated" fees PNC and Albertelli Law each expects to incur but has *not* actually incurred, ranging from estimated attorney's fees to a "Co. Clerk LP Release Estimate," to estimated wire charges.

4.     But "estimated" fees and Defendants' conduct regarding them are unlawful. The uniform mortgage instruments of Plaintiffs and Class Members only authorize charges for fees actually incurred for services actually performed. Also, RESPA requires mortgage servicers to provide mortgage information that is accurate, clear, and conspicuous, which the reinstatement quote letters PNC sends borrowers imposing nebulous fee estimates, are not.

5.     The FCCPA prohibits enforcement of a debt when a person knows the debt is not legitimate or asserts the existence of a legal right that is known not to exist.  PNC and Albertelli Law each knew imposing "estimated fees" was illegal, and those fees could not be imposed on Plaintiffs and Class Members.  Nevertheless, PNC and Albertelli Law each has continued to collect "estimated" fees via form letters based on reinstatement quotes from Albertelli Law.

6.     For the foregoing conduct as detailed more fully below, Plaintiff brings three counts: Count I and Count II against PNC and Albertelli Law for their respective violations of the FCCPA, and Count III against PNC for its violation of RESPA. Defendants individually and in concert violated Plaintiffs' and Class Members' substantive rights under these statutes, causing Plaintiffs and the putative Class Members cognizable injuries, giving rise to this action for statutory damages under them.

## PARTIES

7.     Plaintiffs, Rose Mary Paolino and Jeffrey Paolino, are natural persons and consumers who reside and own a home in this District.  They are citizens of Florida.  They have taken out a mortgage loan on a home memorialized by the standardized Fannie Mae/Freddie Mac Uniform Instrument for a single-family home.

8.     Each Class Member has entered this same form instrument or a substantially and materially similar standardized mortgage instrument as Plaintiffs.

9.     Defendant PNC Bank, National Association ("PNC"), is a national banking association with its main office in Delaware, where it is a citizen.

10.     PNC has routinely acted a mortgage servicer and collector of mortgage loan debts in this District.  And it has routinely mailed Plaintiffs and Class Members written communications imposing on them "estimated" fees to reinstate their loans on residential properties here.

11.     Defendant James E. Albertelli, P.A., d/b/a ALAW ("Albertelli Law") is a Florida for-profit professional association and citizen, with its principal offices in Jacksonville, Florida, and another main location in Tampa, Florida.

12.     At all times material, Albertelli Law and PNC acting individually, and they acted jointly and in concert, in contravention of the FCCPA, and each Defendant was the agent or employee of the other for purposes of collecting consumer debts, including those of Plaintiffs and Class Members under the statute. With the authority from and on behalf of PNC and within the scope of its agency with PNC, Albertelli Law systematically and routinely prepared form reinstatement quotes mailed to Florida homeowners by PNC or Albertelli Law that imposed "estimated" fees for loans PNC had serviced.

13.     To the extent any part of the imposition of "estimated" fees was not in whole or in part authorized by PNC, PNC has had full knowledge of the imposition and form reinstatement quotes and fully ratified Albertelli Law's conduct alleged in this complaint, among other things, by systematically and routinely adopting and sending these form reinstatement quotes in letters containing those fees appearing under Albertelli Law's letterhead to Plaintiffs and Class Members and stating the letter represented the quoted amount required to reinstate Plaintiffs' and Class Members' mortgage loans.

14.     PNC's and Albertelli Law's pattern of conduct in charging Plaintiffs and Class Members "estimated" fees relating to their mortgage loans alleged throughout this complaint is the subject of this suit.

### JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of RESPA, a federal statute.

16.     The Court has supplemental jurisdiction over the FCCPA claim under 28 U.S.C. § 1367, because this claim is so related to the federal RESPA claims that it forms part of the same case or controversy under Article III of the United States Constitution.

17.     The Court has personal jurisdiction because each Defendant does business throughout the United States, including Florida and this District and because specific conduct and acts giving rise to this litigation occurred in this District. Also, at all times material to this action, each Defendant has maintained voluntary, continuous, and systematic contacts with Florida including local offices and operations in Florida, transacting substantial and regular mortgage servicing, foreclosure, and debt collection business in or affecting Florida, including of Plaintiffs' loan in this District and other mortgage loans on residential properties including those of Class

Members in this District and in Florida, making it foreseeable each Defendant would be subject to this Court's jurisdiction.

18.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because each Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and because each Defendant's contacts with this District are sufficient to subject it to personal jurisdiction.

19.     All conditions precedent to the filing of this action, if any, have been performed, have occurred, or have been waived.

20.     In an attempt to amicably resolve the issues between the parties, on April 19, 2018 (PNC) and April 20, 2018 (Albertelli Law), Plaintiffs sent each Defendant a notice and cure letter attempting to resolve this dispute about its practice of charging "estimated" fees to Plaintiffs and Class Members. Each Defendant respectively ignored Plaintiffs' attempt to resolve the issues at hand. This complaint followed.

## APPLICABLE LAW

### I.     RESPA

21.     Plaintiffs' and Class Members' mortgage loans are "federally related mortgage loan[s]" as defined in 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2(b).

22.     RESPA imposes certain obligations on mortgage servicers including PNC to provide information to borrowers regarding their mortgage loans. 12 U.S.C. § 2605. In 2013, the CFPB enacted new regulations implementing specific provisions under RESPA and the Dodd-Frank Act concerning mortgage loan servicers including, but not limited to, certain requirements for responding to a written request for information concerning a borrower's mortgage loan. *See* 12 C.F.R. § 1024.36 *et seq.*; Public Law 111-203, 124 Stat. 1376 (2010).

23.     Under RESPA, a servicer, including PNC, of a federally related mortgage loan "shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of" RESPA. 12 U.S.C. § 2605(k)(1)(E).

24.     RESPA requires mortgage services, including PNC, to make certain disclosures to borrowers and respond with information upon their requests. *See* 12 USC § 2605.

25.     RESPA's mortgage servicing regulations require servicers like PNC to respond in writing to a borrower's written request for information and provide responsive information that is "clear and conspicuous." 12 CFR § 1024.32(a)(1).

26.     RESPA also requires a servicer like PNC to maintain policies and procedures that are reasonably designed to ensure that the servicer can provide a borrower with "accurate and timely disclosures . . . as required by this subpart or other applicable law" and "[p]rovide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 C.F.R. 1024.38(a)(b)(1)(i),(iii).

## II.     FCCPA

27.     The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

28.     The FCCPA prohibits persons, including Albertelli Law and PNC, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

29.     Specifically, the FCCPA states that no person, including Albertelli Law and PNC, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not

legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFFS

30. Approximately May 14, 2003, Plaintiffs purchased a home in Parkland, Florida through a loan from National City Mortgage Co. d/b/a Commonwealth United Mortgage Company, secured by a mortgage on the property. A copy of Plaintiffs' mortgage loan agreement is attached as **Exhibit A**. A copy of their mortgage note is attached as **Exhibit B**. The mortgage loan agreement is a Fannie Mae/Freddie Mac Uniform Instrument for Florida.

31. On June 9, 2004, National City Mortgage Co. recorded an Assignment of Mortgage assigning Plaintiffs' Mortgage Agreement and Mortgage Note to Deutsche Bank Trust Company Americas as Trustee for Residential Accredit Loans, Inc. Mortgage Asset-Backed Passthrough Certificates, Series 2003-QS15 ("Deutsche"). *See* **Exhibit C.**

32. Approximately November 1, 2011, Plaintiffs allegedly defaulted on their loan. Plaintiffs assert the alleged default was due to payment processing errors by the mortgage servicer. The matter was resolved with a modification of their loan.

33. On October 1, 2008, National City Mortgage Co. merged into and with National City Bank. Thereafter, National City Bank Merged with and into PNC. A copy of the State of Ohio's Certification of Merger and related paperwork is collected in **Exhibit D**.

34. On or around July 1, 2015, Plaintiffs allegedly defaulted on their loan. Plaintiffs assert the alleged default was due to payment processing errors by the mortgage servicer.

35. On or around October 14, 2015, Deutsche recorded an Assignment of Mortgage assigning the Plaintiffs' Mortgage Agreement and Mortgage Note to National City Mortgage Co. a/k/a National City Mortgage aka PNC. *See* **Exhibit E.**

36. When Plaintiffs learned of the Payment Processing Errors, they attempted to resolve the payment processing error, but PNC refused to do so.

37. On or about June 1, 2016, J & M Advocacy Group, on behalf of Plaintiffs, sent a written request for information to PNC requesting the amount Plaintiffs had to pay to reinstate their loan. The Letter is attached as **Exhibit F**.

38. PNC received the letter and responded with a letter dated June 16, 2016, which is attached as **Exhibit G**.

39. PNC's letter incorporated a reinstatement quote from Albertelli Law. *Id.*

40. Immediately below the heading on the reinstatement quote, the letter advised:

**WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

*Id.* (emphasis in original).

41. On the first page of the quote incorporated into the letter, PNC, and Albertelli Law on PNC's behalf, required Plaintiffs to pay $49,565.24 to reinstate their loan. *Id* The letter specified, "[t]his letter responds to your request for a Reinstatement of the above referenced loan. As of the date of this letter the amount required to cure your delinquency is $49,565.24**." *Id.* It continued: "This reinstatement quote is good thru 06/23/2016. If you reinstate this loan in full by the good through date, we estimate the reinstatement amount to be itemized as listed on the next page." *Id.*

42. On the second page of the quote, each Defendant included the following table, itemizing the "estimated" fees, included in the total amount each Defendant demanded:

| | |
|---|---|
| Total Payments – 12 | $42,525.60 |
| Property Inspections | $105.00 |
| Escrow Shortage | $1,253.14 |
| Corporate Advance | $5,218.50 |
| **Outstanding Attorney Fees and Costs** | |
| Attorney Fees Co. Hearing Dismiss Estimate | $250.00 |
| Title Add'l | $63.00 |
| Co. Clerk LP Release Estimate | $25.00 |
| Dismissal Prep Fee | $125.00 |
| **TOTAL Good Through 06/23/2016** | **$49,565.24**\*\* |

**\*There is important information at the end of this letter regarding estimates of escrow advances, fees, and costs. Please read carefully.**

WE SUGGEST THAT YOU CONTACT **ALBERTELLI LAW** AT THE ADDRESS OR TELEPHONE NUMBER ON THIS LETTER TO VERIFY THE EXACT AMOUNT NECESSARY TO REINSTATE/PAYOFF YOUR LOAN **NO MORE THAN THREE BUSINESS DAYS** BEFORE YOU MAKE ANY PAYMENT.

43.     All of the foregoing fees labeled "Attorney Fees Co. Hearing Dismiss Estimate" for $250.00, "Dismissal Prep Fee" for $125.00," "Co. Clerk LP Release Estimate" for $25.00," and "Corporate Advance" charges were estimates PNC and Albertelli Law each expected to incur but had *not* actually incurred.

44.     To confuse matters further, the letter threatens that failure to pay the total amount demanded including these estimates "today," may increase "the amount owed," and "[t]he reinstatement amount may increase because of additional interest and late charges as well as legal fees and costs that are incurred as additional steps in the foreclosure proceed [sic]." *Id.* (emphasis added).

45.     The sentence marked by the asterisk below the table quoted above, does not refer to a specific paragraph explaining the fees. The only paragraph below the table and preceded by an asterisk reads,

**\*IMPORTANT:** If your reinstatement amount tendered is less than the total amount due on the date of your payment, the lender or servicer reserves the right to reject your payment and continue with the legal process.

46.     Nowhere in the letter does either PNC or Albertelli Law state it will return any of the estimated amounts if paid by Plaintiffs but not incurred by PNC or Albertelli Law.

47.     PNC and Albertelli Law each provided no information or explanation concerning the $5,218.50 charge labeled "Corporate Advance" either.

48.     The letter nowhere specifies how these "estimated" fees were calculated, whether they may be disputed, or what provision of the uniform mortgage loan instrument gives rise to them.

49.     To make matters worse, PNC and Albertelli Law, acting individually, and acting jointly and in concert, imposed these "estimated" fees despite that the uniform mortgage instrument Plaintiffs executed specifically only authorizes fees that are incurred and disbursed for services actually performed in connection with a default on the loan. *See* Exhibit A at ¶ 9 (borrower pays for expenses "disbursed by Lender"), ¶ 14 (borrower pays fees for "services performed"), ¶ 19 (borrower pays Lender for "expenses incurred"); and ¶ 22 ("expenses incurred").

## **DEFENDANTS' UNIFORM COURSE OF CONDUCT**

50.     Plaintiffs' experience is not unique. As with Plaintiffs, PNC has regularly serviced and collected on the home mortgage debts of Class Members defined below, and PNC has routinely and systematically charged Class Members "estimated" fees via standardized reinstatement quotes PNC or Albertelli Law mailed them when Plaintiffs' and Class Members' loans were in default.

51.     As with Plaintiffs, Albertelli Law has routinely and systematically provided Class Members reinstatement quotes incorporated into letters mailed to Class Members and imposing "estimated" fees with the authority from and on behalf of PNC and within the scope of its agency with PNC.

52.     Upon information and belief, PNC and Albertelli Law each track or are able to track its respective general business practices as they relate to each member of the Class, including Plaintiffs, electronically, and each maintains electronic records that are searchable regarding the loans and debts each respectively collects and the "estimated" fees each respectively imposes and collects.

53.     Upon information and belief, PNC and Albertelli Law each track or are able to track via electronic records homeowners' written requests for information and reinstatement quotes.

54.     Upon information and belief, PNC also maintains searchable electronic records of the loans it services including the relevant loans of Plaintiffs and Class Members alleged here.

55.     Each Class Member like each Plaintiff has executed the standardized Fannie Mae/Freddie Mac Uniform Instrument for a single-family home, or a substantially and materially similar standardized mortgage instrument, which, as stated above, only authorizes fees that are incurred and disbursed for services actually performed in connection with a default on the loan.

56.     As with Plaintiffs, each Class Member was mailed, as a matter of routine and general business practice, a reinstatement quote based on a standardized form under the letterhead of Albertelli Law, sent by mail by PNC directly or through Albertelli Law acting as agent for PNC. These form letters each uniformly included preprinted texts containing materially similar language,

   a.  Stating "We May Be Considered a Debt Collector;"

   b.  Representing an amount required be tendered to cure the loan deficiency, with the threat that failure to pay the total amount demanded including "estimated" fees "today" may increase the amount owed and lead to other fees;

    c.   Representing an amount required be tendered to cure the loan deficiency followed later in the letter by a table showing a "TOTAL" amount due, consisting of an array of estimated fees and charges referred to over two pages that must be remitted to reinstate the mortgage loan;

    d.   Demanding that any "estimated" fees must be remitted to reinstate the loan;

    e.   Omitting information enabling Plaintiffs and Class Members to determine the minimum amount each will need to pay to reinstate the mortgage at any given moment in the future, and an explanation of the "estimated" fees required; and,

    f.   Omitting information explaining how "estimated" fees were calculated, whether they may be disputed, what provision of the uniform mortgage loan instrument gives rise to them, and whether any "estimated" fees paid but not incurred may be returned.

57.    ***Defendants' Knowledge***. Moreover, each Defendant systematically made these demands for "estimated" fees in form letter as part of the total amounts due from Plaintiffs and Class Members to reinstate their loans, *when it knew* respectively these were not legitimate debts and fees and that it had no lawful right to collect them.

58.    PNC maintains electronic records of the actual costs and fees associated with each borrower's loan, including the loans of Plaintiffs and Class Members. Upon information and belief, Albertelli Law has access to that information, including its own costs and expenses in collecting mortgage loan debts.

59.    PNC is a sophisticated mortgage loan servicer with compliance officers monitoring changes in the law and knowing the terms of mortgages it services and the statuses of debts and periodic payments it collects on them. Albertelli Law is highly experienced in debtor/creditor law,

collections, and mortgage law and knew about changes in the law and knew the terms of mortgage instruments whose debts it collects and enforces and the statuses of debts it states in reinstatement quotes under its letterhead either it or PNC has mailed to borrowers.

60.     Nevertheless, PNC and Albertelli Law acting individually, and acting jointly and in concert, imposed "estimated" fees when the uniform mortgage instruments Plaintiffs and Class Members executed specifically only authorize fees that are incurred and disbursed for services actually performed in connection with a default on the loan. *See, e.g.,* Exhibit A at ¶ 9 (borrower pays for expenses "disbursed by Lender"), ¶ 14 (borrower pays fees for "services performed"), ¶ 19 (borrower pays Lender for "expenses incurred"); and ¶ 22 ("expenses incurred").

61.     Indeed, well before the reinstatement letters at issue, the Eleventh Circuit held that the collection of "estimated" fees was illegal, because the mortgage instruments only allowed for fees actually incurred by the debt collector or servicer.  The Eleventh Circuit reversed the district court's grant of summary judgment on the FCCPA claim, opining, among other things, that the defendants were not permitted to charge "estimated" fees that had not yet incurred in their reinstatement of loan letter. *Prescott v. Seterus, Inc.,* 635 Fed. Appx. 640, 647 (11th Cir. 2015) ("[The defendants] violated the...FCCPA by charging [the plaintiffs] estimated attorney's fees that they had not agreed to pay in the security agreement.").

62.     Well before the reinstatement letters at issue, the media and trade publications consistently warned the industry against including estimated fees in reinstatement of loan letters, particularly those in the Eleventh Circuit where *Prescott* is binding precedent. Some of those industry warnings include the following:

        a.  *11th Circuit Finds Lender Violated FDCPA And Florida Law, Reverses Ruling,* Lexis Legal News (Dec. 7, 2015) ("The appeals court found that Seterus violated the FDCPA and the FCCPA by charging Prescott estimated attorney fees and refused to affirm the District Court's decision.").

b. *Eleventh Circuit Issues Stern Warning Against Inclusion of Estimated Fees and Costs in Reinstatement Quotes*, USFN (Jan. 4, 2016) ("The Prescott decision should cause any lender, loan servicer, or law firm that provides reinstatement quotes and/or figures to borrowers to examine its practices and procedures in order to determine whether or not information being provided to borrowers in reinstatement situations could potentially constitute a FDCPA violation (or a violation of state consumer protection law, such as the FCCPA). The Eleventh Circuit has sent a clear message to the financial services industry . . . .").

c. *Recent Eleventh Circuit Reversal Sparks Upward Trend in Estimated-Fee FDCPA Litigation*, Lenderlaw Watch (Feb. 9, 2016) ("Concluding that the payoff quote was a demand for payment, [the Eleventh Circuit] held that the inclusion of fees that had not yet been incurred (even if expressly designated as such) was a demand for compensation not permitted by the plaintiff's mortgage agreement. . . . [L]oan servicers should consider the impact of *Prescott* on their communications with borrowers.").

d. *News Alert: FDCPA Violations for Estimated Fees and Costs in Reinstatement and Payoff Quotes*, Potestivo & Associates (April 15, 2016) ("The recent Appellate Court decision in Prescott, v. Seterus, Inc. . . . has gained nationwide notice. Although the decision is only binding on the Eleventh Circuit, it has opened the door and neatly laid the ground work for other jurisdictions to give similar rulings in the future. Consequently, it is important for servicers and attorneys to be informed and proactive regarding their decisions when it comes to estimated fees and costs in reinstatement and payoff quotes.").

e. *A Violation of the FDCPA – Estimating Attorney's Fees in Reinstatement Figures*, Legal League 100 Quarterly (Q2 2016) ("The federal courts have recently held that lenders may only charge for fees and expenses already incurred.").

63.     Additionally, the CFPB has received over 4,716 complaints concerning PNC's improper loan servicing practices, many involving similar complaints regarding requests for debt not actually owed.[1]

---

[1] *See* https://www.consumerfinance.gov/data-research/consumer-complaints/search/?company=PNC%20Bank%20N.A.&from=0&product=Mortgage&product=Mortgage%E2%80%A2Other%20mortgage&product=Mortgage%E2%80%A2Conventional%20fixed%20mortgage&product=Mortgage%E2%80%A2Home%20equity%20loan%20or%20line%20of%20credit&product=Mortgage%E2%80%A2FHA%20mortgage&product=Mortgage%E2%80%A2Conventional%20adjustable%20mortgage%20%28ARM%29&product=Mortgage%E2%80%A2Conventional%20home%20mortgage&product=Mortgage%E2%80%A2Home%20equity%20loan%20or%20line%20of%20credit%20%28HELOC%29&product=Mortgage%E2%80%A

64. ***The Common Injury***. The FCCPA and RESPA respectively create shared, substantive statutory rights for Plaintiffs and Class Members.

65. The FCCPA creates a private right of action. *See* § 559.77, Fla. Stat. By the FCCPA the Florida Legislature created shared, substantive statutory rights of Plaintiffs and Class Members to be enforced privately, including, but not limited to, the rights to be protected from collection of their debts by (a) persons who know that the debts they are attempting collect from them are not legitimate or (b) persons that assert the existence of some legal right *vis-à-vis* their debts when such person knows that the right does not exist. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

66. PNC and Albertelli Law acting individually, and acting jointly and in concert, imposed and represented in form letters "estimated" fees and total amounts demanded incorporating them, and in doing so, each Defendant violated the shared substantive rights of Plaintiffs and Class Members under the FCCPA, because in those letters PNC and Albertelli Law each attempted to collect debts when each one knew respectively,

    a. It had no legal right to collect them because the debts were not legitimate under the terms of Plaintiffs' and Class Members' mortgage instruments; and,

    b. It had no legal right to collect them because the debts were not legitimate under controlling law.

---

2VA%20mortgage&product=Mortgage%E2%80%A2Other%20type%20of%20mortgage&product=Mortgage%E2%80%A2Second%20mortgage&product=Mortgage%E2%80%A2Reverse%20mortgage&product=Consumer%20Loan&product=Consumer%20Loan%E2%80%A2Vehicle%20loan&product=Consumer%20Loan%E2%80%A2Installment%20loan&product=Consumer%20Loan%E2%80%A2Personal%20line%20of%20credit&product=Consumer%20Loan%E2%80%A2Title%20loan&product=Consumer%20Loan%E2%80%A2Pawn%20loan&product=Consumer%20Loan%E2%80%A2Vehicle%20lease&searchField=all&searchText=&size=25&sort=created_date_desc. (Accessed May 14, 2018).

67.     RESPA also creates a private cause of action. 12 U.S.C. § 2605(f); 12 U.S.C. § 2614. A violation of the rules implementing the statute, Title 12, Part 1024, Code of Federal Regulations, violates RESPA. 12 U.S.C. § 2605(k)(1)(E).

68.     By RESPA and its rules, Congress created shared, substantive statutory rights of Plaintiffs and Class Members to be enforced privately, including, but not limited to, the right to receive responsive information containing accurate, clear, and conspicuous disclosures from PNC about the fees and costs required to reinstate their mortgage loans and PNC will maintain policies and procedures for responding to requests for information that ensure accurate information is communicated to them. 12 U.S.C. § 2605(k)(1)(E); 12 CFR § 1024.32(a)(1); 12 CFR § 1024.38(b)(1)(iii).

69.     At all times material to this action, PNC has routinely responded to written requests for information from borrowers, including Plaintiffs and Class Members, with form letters adopting reinstatement quotes from Albertelli Law imposing "estimated" fees and total amounts due incorporating them. As such, PNC violated the shared, substantive statutory rights of Plaintiffs and Class Members under RESPA, because the information represented in these responsive statements about these fees and the total amounts due incorporating them was neither clear, nor conspicuous, nor accurate information about their loans and the amounts due under them.

## CLASS ACTION ALLEGATIONS

70.     Plaintiffs ask to be designated as "Class Representatives," and as Class Representatives bring this action under Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of all other persons similarly situated—the "Classes" or "Class Members" defined as follows:

FCCPA "Estimated" Fee Class (PNC)
Within the applicable statutes of limitation, all natural persons, (a) whose residences with addresses in Florida were mortgaged under the standardized Fannie Mae/Freddie Mac Uniform Instrument or a substantially similar standardized

residential mortgage instrument; (b) whose debts under those instruments PNC collected; and (c) whom PNC mailed a letter containing a reinstatement quote from Albertelli Law, representing total amounts due, incorporating estimated fees.

FCCPA "Estimated" Fee Class (Albertelli Law)
Within the applicable statutes of limitation, all natural persons, (a) whose residences with addresses in Florida were mortgaged under the standardized Fannie Mae/Freddie Mac Uniform Instrument or a substantially similar standardized residential mortgage instrument; (b) whose debts under those instruments Albertelli Law attempted to collect for PNC; and (c) whom Albertelli Law mailed a letter, representing total amounts due for those debts, incorporating estimated fees.

RESPA "Estimated" Fee Class (PNC)
Within the applicable statutes of limitation, all natural persons, (a) whose residences with addresses in Florida were mortgaged under the standardized Fannie Mae/Freddie Mac Uniform Instrument  or a substantially similar standardized residential mortgage instrument; (b) whose scheduled periodic payments under those  PNC collected and made payments of principal and interest on those loans with respect to the amounts of those payments; and (c) whom PNC in response to a written request for information mailed a letter incorporating a reinstatement quote from Albertelli Law representing total amounts due, incorporating estimated fees.

Plaintiffs and Class Members reserve the right to amend the Class definitions as discovery proceeds and to conform to the evidence.  Excluded from the Classes are persons whose reinstatement letters according to PNC's or Albertelli Law's records were returned as undeliverable, persons whose mortgages were for commercial purposes, not for personal, family, or household purposes, and each Defendant, and any subsidiary or affiliate of each Defendant, and the directors, officers and employees of each Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

71.    Class Members are identifiable through each Defendant's records and payment databases.

72.    ***Numerosity (Rule 23(a)(1)).***  Plaintiffs allege on information and belief that the number of Class Members is so numerous that joinder of them is impractical. At this time, Plaintiffs do not know the exact number of Class Members, but the members of the Classes will

be easily ascertained through Defendants' electronic records, data, and databases. Plaintiffs' belief is bolstered by information indicating as of December 2017, PNC held $1.8 billion in mortgage servicing rights; PNC is part of corporate structure that has purchased large pieces of distressed mortgages or merged with entities servicing those mortgages; PNC has numerous locations here; and Florida has had one of the highest foreclosure rates in the US.

73.    ***Commonality (Rule 23(a)(2))***.  There are common questions of law and/or fact that predominate over any questions affecting only individual members of the classes.   These predominant common questions of law and/or fact include the following:

   a.  Whether the Fannie Mae/Freddie Mac Uniform Instrument or a substantially similar standardized residential mortgage instrument executed by Plaintiffs and Class Members authorizes Defendants to impose "estimated" fees;

   b.  Whether "estimated" fees are legitimate debts and each Defendant has a legal right to collect them under Plaintiffs' and Class Members' mortgage loan intruments, and if not whether each Defendant's imposition of "estimated" fees violated the FCCPA;

   c.   Whether "estimated" fees are legitimate debts and each Defendant has a legal right to collect them under the law in this Circuit, and if not whether each Defendant's imposition of "estimated" fees violated the FCCPA;

   d.  Whether the reinstatement quote letters contained clear, conspicuous, accurate information and disclosures about the fees owed and total amounts dues on Plaintiffs' and Class Members' mortgages, and if not whether PNC violated RESPA;

e.   Whether Plaintiffs and Class Members are entitled to statutory damages under the FCCPA and the amounts thereof;

f.   Whether Plaintiffs and Class Members are entitled to statutory damages under RESPA; and,

g.   Whether Plaintiffs and Class Members are entitled to attorney's fees and costs and the amounts thereof.

74.   *Typicality (Rule 23(a)(3))*. The claims of the Class Representatives are typical of the claims that would be asserted by other members of the Classes in that, in proving their claims under the FCCPA and RESPA, Plaintiffs will simultaneously prove the claims of all Class Members. The rights afforded under the FCCPA and RESPA are the same for Plaintiffs and Class Members. Plaintiffs and each Class Member entered a substantially similar standardized mortgage instrument and was sent the standardized letter with reinstatement quote described above, when PNC and Albertelli Law were trying to collect a debt under that mortgage or were responding to a request for information about it. If this conduct violates the FCCPA and/or RESPA it does so not only for each Plaintiff but for each Class Member. Moreover, any statutory damages awarded under those statutes will be formulaic.

75.   *Adequacy (Rule 23(a)(4))*. The Class Representatives are natural persons whose mortgaged residence is in Florida, and they have no conflicts of interest and will fairly and adequately protect and represent the interests of each member of the Classes. Additionally, the Class Representatives are fully cognizant of their responsibility as Class Representatives and have retained experienced counsel fully capable of, and intent upon, vigorously pursuing the action. Each class counsel has extensive experience in class or FCCPA and RESPA claims in this District.

76.     ***Predominance and Superiority Rule 23 (b)(3)***.  The common questions identified above predominate over any questions of law or fact affecting only individual members of the Classes.  Moreover, class treatment is clearly superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**(Florida Consumer Collection Practices Act § 559.72(9), Fla. Stat.)**
**(PNC)**

77.     Plaintiffs incorporate by reference paragraphs 1-20, 27-66, and 70-76 as if set forth fully herein.

78.     Each Plaintiff and each Class Member was a "debtor" and "consumer" as defined by Section 559.55(8), Florida Statutes, when each purchased a home by mortgage in Florida.

79.     In Section 559.72, Florida Statutes, the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.  PNC is a "person" within the meaning of the FCCPA. *Id.*; *see also* § 1.01(3), Fla. Stat.

80.     The mortgage loans of Plaintiffs and Class Members are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

81.     The FCCPA creates a private right of action. *See* § 559.77, Fla. Stat.

82.     As stated above in Paragraphs 64-66, the Florida Legislature created shared, substantive statutory rights of Plaintiffs and Class Members to be privately enforced and protected under the FCCPA, which PNC violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

83.     Under Section 559.72, Florida Statutes,

In collecting consumer debts, no person shall:

......

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

84.     Based on the foregoing allegations, PNC acting individually, and acting jointly and in concert with Albertelli Law, violated Section 559.72(9), Florida Statutes, by attempting to collect "estimated" fees, when, as stated above, PNC knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

85.     Based on the foregoing allegations, PNC acting individually, and acting jointly and in concert with Albertelli Law, violated Section 559.72(9), Florida Statutes, by attempting to collect "estimated" fees, when, as stated above, PNC knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

86.     These violations of the FCCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FCCPA rights.

87.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

## COUNT II
### (Florida Consumer Collection Practices Act § 559.72(9), Fla. Stat.)
### (Albertelli Law)

88.     Plaintiffs incorporate by reference paragraphs 1-20, 27-66, and 70-76as if set forth fully herein.

89.     Each Plaintiff and each Class Member was a "debtor" and "consumer" as defined by Section 559.55(8), Florida Statutes, when each purchased a home by mortgage in Florida.

90.     In Section 559.72, Florida Statutes, the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts. Albertelli Law is a "person" within the meaning of the FCCPA. *Id.*; *see also* § 1.01(3), Fla. Stat.

91.     The mortgage loans of Plaintiffs and Class Members are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

92.     The FCCPA creates a private right of action. *See* § 559.77, Fla. Stat.

93.     As stated above in Paragraphs 64-66, the Florida Legislature created shared, substantive statutory rights of Plaintiffs and Class Members to be privately enforced and protected under the FCCPA, which Defendants violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

94.     Under Section 559.72, Florida Statutes,

> In collecting consumer debts, no person shall:
> ......
> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

95.     Based on the foregoing allegations, Albertelli Law acting individually, and acting jointly and in concert with PNC, violated Section 559.72(9), Florida Statutes, by attempting to collect "estimated" fees, when, as stated above, Albertelli Law knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

96.     Based on the foregoing allegations, Albertelli Law acting individually, and acting jointly and in concert with PNC, violated Section 559.72(9), Florida Statutes, by attempting to

collect "estimated" fees, when, as stated above, Albertelli Law knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

97.     These violations of the FCCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FCCPA rights.

98.     As a result of these violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

**COUNT III**
**(Real Estate Settlement Procedures Act 12 U.S.C. § 2605(k))**
**(PNC Only)**

99.     Plaintiffs incorporate by reference paragraphs 1-26, 30-56, 64, and 67-76 as if set forth fully herein.

100.     Plaintiffs' and Class Members' loans are "federally related mortgage loan[s]" because they are secured by first or subordinate liens residential real property designed for the occupancy of one to four families. *See* 12 U.S.C. § 2602(1).

101.     RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

102.     RESPA defines "servicer" as the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(3).

103.     At all times material, PNC was a "servicer" under RESPA because it was responsible receive scheduled periodic payments from Plaintiffs and Class Members under the

terms of their mortgage instruments and made payments of principal and interest with respect to those amounts under the terms of those loans. 12 U.S.C. § 2605(i)(3).

104.     RESPA is implemented by federal rules and regulations whose violations constitute violations of RESPA. Under RESPA, as a servicer of a federally related mortgage loan, PNC "shall not ... fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

105.     Rulemaking authority for RESPA was assigned to the Consumer Financial Protection Bureau ("CFPB") under the Dodd-Frank Act. Pub. L. No. 111-203, 124 Stat. 1376, §§ 1061, 1098 (July 21, 2010); 12 C.F.R. pt. 1024 (formerly 24 C.F.R. pt. 3500).

106.     In 2013, the CFPB enacted new regulations implementing specific provisions under the Dodd-Frank Act for mortgage loan servicers including, but not limited to, requirements for responding to a borrower's written request for information concerning his or her mortgage loan. *See* 12 CFR § 1024.36 *et seq*.; Public Law 111-203, 124 Stat. 1376 (2010).

107.     As stated above, Plaintiffs sent a written "request for information" to PNC concerning their mortgage loan and the amount necessary to reinstate it off. *See* 12 CFR § 1024.36.

108.     PNC responded to their written request with a letter imposing "estimated" fees among an array of fees referred in two different pages, all as part of the "TOTAL" amount due they must remit to reinstate their loan.

109.     PNC has at all times material likewise as a matter of routine general practice responded to Class Members' written requests for information with the same form letter incorporating a reinstatement quote, imposing "estimated" fees among an array of fees referred in

two different pages, all as part of the "TOTAL" amount due it required them to remit to reinstate their loans.

110.    But the "estimated" fees are not permitted in this Circuit and not permitted under Plaintiffs' and Class Members' mortgage instruments, which only authorize fees that are incurred and disbursed for services actually performed in connection with a default on the loans.

111.    Also, PNC stated these fees routinely and systematically in a various array of fees in a table referred to over two pages and omitted information permitting Plaintiffs and Class Members to determine the minimum amount each will need to pay to reinstate the mortgage at any given moment in the future, an explanation of the "estimated" fees required, explaining how "estimated" fees were calculated, whether they may be disputed, what provision of the uniform mortgage loan instrument gives rise to them, and whether any "estimated" fees paid but not incurred may be returned.

112.    RESPA creates a private cause of action. 12 U.S.C. § 2605(f); 12 U.S.C. § 2614.

113.    As stated above in Paragraphs 64 and 67-69, by RESPA and its rules, Congress created shared, substantive statutory rights of Plaintiffs and Class Members to be enforced privately, which BANA violated. 12 U.S.C. § 2605(k)(1)(E); 12 CFR § 1024.32(a)(1); 12 CFR § 1024.38(b)(1)(iii).

114.    Based on the foregoing allegations, PNC violated RESPA, when in its form letters incorporating reinstatement quotes it failed to provide information to Plaintiffs and Class Members, which was accurate, and failed to provide information in a clear and conspicuous manner. 12 U.S.C. § 2605(k)(1)(E); 12 CFR § 1024.32(a)(1); 12 CFR § 1038.32(b)(1)(iii).

115.    As set forth above, PNC's implementation of "estimated" fees has been part of a pattern and practice.

116.    These violations of RESPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive RESPA rights.

117.    As a result of PNC's pattern and practice of committing the foregoing RESPA violations, Plaintiffs and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under 12 U.S.C. § 2605(f).

## JURY DEMAND AND RESERVATION

118.    Plaintiffs are entitled to and respectfully demand a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE Plaintiffs, on behalf of themselves and the Classes, respectfully request this Court to award against Defendants in favor of Plaintiffs and the Class all of the following:

a.    Certifying either Count I or Count II or Count III, or a combination thereof for class treatment under Federal Rules of Civil Procedure 23(a) and (b)(3), appointing each Plaintiff as a Class Representative, and appointing Plaintiffs' attorneys as counsel for the Classes;

b.    A judgment for statutory damages applicable under the FCCPA and RESPA;

c.    A judgment for costs and reasonable attorney's fees applicable under the FCCPA and RESPA; and,

d.    Any other relief for Plaintiffs and the Classes the Court deems just and proper.

Dated: June 6, 2018

Respectfully submitted,

ZEBERSKY PAYNE, LLP
110 S.E. 6th Street, Suite 2150
Fort Lauderdale, FL 33301
Telephone: (954) 595-6060
Facsimile: (954) 989-7781

_____

JORDAN A. SHAW, ESQ.
Fla. Bar No.: 117771
jshaw@zpllp.com
MARK FISTOS, ESQ.
Fla. Bar No.: 0909191
mfistos@zpllp.com
KIMBERLY A. SLAVEN, ESQ.
Fla. Bar No.: 117964
kslaven@zpllp.com

CONSUMER LAW ORGANIZATION, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132

/s/ J. Dennis Card Jr.
J. DENNIS CARD, JR., ESQ.
Fla Bar No.: 0487473
dennis@cloorg.com
DARREN R. NEWHART, ESQ.
Fla. Bar No.: 0115546
darren@cloorg.com